IN THE UNITED DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
:
MARIA CARLA GIANNINO,           :
                                :
                    Plaintiff,  :       CIVIL ACTION
     v.                         :
                                :       No.:
ONBE, INC; and                  :
FIFTH THIRD BANK, N.A.,         :
                                :       **JURY TRIAL DEMANDED**
                    Defendants. :
_____:

## COMPLAINT

Plaintiff, MARIA CARLA GIANNINO, by and through her attorney Joseph M. Adams, Esq., brings this Complaint seeking an award of damages against Defendants, ONBE, INC. ("ONBE"), and FIFTH THIRD BANK, N.A. ("FTB") for multiple violations of the Electronic Fund Transfer Act (hereinafter, "EFTA"), 15 U.S.C. §1693, *et seq.*, as implemented by Regulation E, 12 C.F.R. Part 1005; for the tort of Conversion; for the tort of Trespass to Chattels; and for the tort of Fraudulent Misrepresentation.

## INTRODUCTION

1. Plaintiff was the victim of bank fraud resulting in the unauthorized transfer of $41,990.02—representing her accumulated salary for approximately one year—from her payroll card account with Defendants. The subject funds were electronically transferred without Plaintiff's knowledge or consent to an unknown foreign bank in the Philippines.

2. Plaintiff timely reported the fraud to ONBE, but ONBE unjustly denied her claim leaving her to suffer the loss all to her great detriment.

3. Defendants—ONBE directly and FTB vicariously—have failed to fulfill their legal

1

obligations under the EFTA by refusing to conduct a fair, proper, and good faith investigation into the fraud, declining to reimburse Plaintiff, and otherwise disregarded their statutory duties.

4. Plaintiff now seeks damages for multiple violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*; for the tort of conversion; for the tort of trespass to chattels; and, for the tort of fraudulent mispresention.

5. The purpose of EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." The EFTA's "primary objective" is "the provision of individual consumer rights. 15 U.S.C. § 1693(b).

6. Congress enacted the EFTA as a "remedial consumer protection statute," which courts "read liberally to achieve the goals of protecting consumers." *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019).

*7.* Indeed, one federal appeals court recently noted that the purpose of the EFTA is to "benefit consumers, even at the expense of financial institutions". *Michigan First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 426-427 (6th Cir. 2024).

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, et seq. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendants conduct systematic and continuous business within this forum.

10. On or about August 4, 2025, Plaintiff originally commenced this action against Defendants through JAMS Arbitration (Case No. 5450001180) pursuant to a mandatory arbitration provision contained in Respondents' Prepaid Card Agreement.

11. Respondents have materially breached the Arbitration Agreement by failing to pay the required $5,000 arbitration fee, which was due and payable on December 12, 2025. As of the date of this filing, the fee remains unpaid. **(See Exhibit A, Invoice dated Dec. 12, 2025)**.

12. By failing to pay the required fees, Defendants have defaulted in the arbitration, waived their right to compel arbitration, and materially breached the contract governing the dispute resolution process – all to Plaintiff's prejudice and detriment. Consequently, Plaintiff is entitled to now pursue her claims in this Court.

13. Plaintiff has requested that JAMS formally issue a notice of termination due to Defendants' non-payment. Plaintiff will file said notice with this Court immediately upon receipt.

## IN THE ALTERNATIVE ONLY: REQUEST TO STAY MATTER

14. To the extent this Court deems this filing premature pending the final administrative closure of the JAMS proceedings, Plaintiff respectfully requests that the Court treat this filing in the interim as a **"protective action."**

15. Such treatment is necessary to preserve Plaintiff's claims under the Electronic Fund Transfer Act ("EFTA"), which are subject to a strict one-year statute of limitations. Given that the limitations period is set to expire sometime in **March 2026**, a JAMS dismissal—even without prejudice—could effectively bar Plaintiff's claims forever if JAMS does not formally terminate the matter until after the applicable March statute of limitations date.

16. Accordingly, should the Court decline to proceed with the case at this time pending a final decision by JAMS – termination or otherwise - Plaintiff would request the Court

3

to **STAY** this action rather than dismiss it. A stay will maintain the status quo and ensure Plaintiff is not deprived of a forum due to Defendants' material breach of the arbitration agreement and the subsequent expiration of the statutory clock.

## PARTIES

17. Plaintiff is a citizen of Argentina, with an address c/o her undersigned counsel, 200 Highpoint Drive, Suite 211A, Chalfont, Bucks County, Pennsylvania, 18914.

18. At all times relevant hereto, Plaintiff was employed as a "Youth Activities Manager" by Royal Caribbean Cruises Ltd., d/b/a Royal Caribbean International ("Royal") which employment involved international seafaring on ships throughout the world. Plaintiff has been employed by Royal for approximately twenty years.

19. At all relevant times hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1693a(6).

20. At all relevant times hereto, Plaintiff had a payroll card account onto which she received her salary from Royal; said payroll card being an "account" as that term is defined by 15 U.S.C. §1693a(2) and Reg. E, 12 C.F.R. § 1005.2(b)(3)(i)(A).

21. At all relevant times hereto, Plaintiff's account was established to hold funds used primarily for Plaintiff's personal use and/or household expenditures.

22. Defendant, ONBE, INC. ("ONBE"), is a financial technology company with offices located at 555 North Lane, Suite 5040, Conshohocken, Pennsylvania, 19428, and with a corporate service address c/o C T Corporation System, 600 North 2nd Street, Suite 401, Harrisburg, PA 17101.

23. Defendant, FIFTH THIRD BANK, N.A. ("FTB"), is a national bank with offices located at 38 Fountain Square Plaza, Cincinnati, Ohio, 45202.

24. At all times and in all matters relevant herein, Defendants acted either directly

themselves or by and through their officers, directors, managers, agents, servants, contractors, attorneys, representatives and/or employees.

25. At all times and in all matters relevant herein, OBNE acted as the agent for FTB.

26. At all times and in all matters relevant herein, each Defendant is a "financial institution" as that term is defined by Regulation E in 12 C.F.R. 1005.2(i).

## INTER-RELATIONSHIP OF "ROYAL", "ONBE" AND "FTB"

27. Royal provides salary to its employee crew members by transmitting payroll data and funds to ONBE, which manages payroll disbursements on Royal's behalf. The funds are then directed into a pooled or custodial account held at FTB, which is the issuing bank associated with the payroll card program.

28. ONBE, acting as the payroll program manager and administrator, allocates the funds and coordinates with FTB, which issues the prepaid payroll cards to Royal employees under an agreement with ONBE.

29. Royal employees receive and access their wages through these payroll cards, which function as debit cards and can be used for purchases or ATM withdrawals.

30. Royal employees may initiate electronic transfers from their payroll card account to their personal bank accounts by linking those accounts through the ONBE-managed online platform or app.

31. The transfer process is initiated through the ONBE platform, after which FTB executes the funds movement, electronically transferring the funds from the payroll card account to the linked external bank account of the Royal employee.

32. If a fraudster gains unauthorized access to the Royal employee's ONBE-managed payroll card account, the fraudster can exploit the system by fraudulently linking their own foreign bank account to the employee's payroll card profile. Once linked, the fraudster can initiate a

5

transfer through the ONBE platform interface; FTB then executes the outbound transfer, resulting in the unauthorized electronic transfer and fraudulent depletion of the employee's payroll card balance. That is what occurred in this case, as more fully detailed below.

## FACTS

33. On March 21, 2025, Plaintiff's payroll card account with ONBE recorded a number of very small suspicious micro-withdrawals, and except for one, under one-dollar each, which Plaintiff did not authorize.

34. On that same date, March 21, 2025, Plaintiff's payroll card account with ONBE was hacked and two large unauthorized electronic fund transfers were made, resulting in Plaintiff losing the sum of $41,990.02.

35. The funds were electronically transferred to an unknown bank in the Philippines—BDO Unibank Inc—after someone other than Plaintiff linked an account at that bank to Plaintiff's ONBE's payroll card account without Plaintiff's authorization or permission.

36. Plaintiff does not have, and has never had, an account with BDO Unibank. Plaintiff's personal bank account is with Bank of America, and it is this account that is linked to her ONBE payroll card account.

37. The first unauthorized fraudulent electronic transfer on March 21, 2025 was in the amount of $16,995.01.

38. The second unauthorized fraudulent electronic transfer on March 21, 2025 was in the amount of $24,995.01.

39. The abovementioned transfers were "unauthorized electronic fund transfers" as defined by 15 U.S.C. § 1693a(12); and, 12 C.F.R. 1005.2(m).

40. Plaintiff noticed these unauthorized fraudulent transfers on March 26, 2025 and immediately reported them to ONBE that same day via the customer service phone number indicated on her payroll card.

41. Plaintiff spoke with an ONBE supervisor by the name of Yeni, who informed Plaintiff to wait 30 to 45 days pending an investigation.

42. Immediately subsequent to that, Plaintiff was issued a new card and password by the Finance Team on board the Royal ship on which Plaintiff was located at the time.

43. On March 30, 2025, Plaintiff received a message from ONBE's customer service by way of "WhatsApp" confirming that ONBE filed the fraud claim effective March 26, 2025 and that it was still under investigation.

44. ONBE's March 30th message requested that Plaintiff allow 30 to 45 days for the results of the investigation. Additionally, ONBE said "Thank you, and please don't hesitate to reach out with further questions or comments!".

45. On March 31, 2025, ONBE again communicated with Plaintiff providing a case number for the fraud report (#2025-03-00003441) and again asked that Plaintiff allow 30 to 45 days to complete the investigation. Additionally, ONBE said, "Thank you, and please don't hesitate to reach out with further questions or comments!".

46. Eight days later, on April 8, 2025, Plaintiff sent an e-mail to ONBE to check on the status of the claim and reflected her that she had bills to pay.

47. In response that same day, April 8, 2025, ONBE simply parroted that the fraud claim was filed on March 26, 2025 and it's still under investigation, and to kindly allow 35 to 45 days for the result of the investigation. Again, ONBE stated "Thank you, and please don't hesitate to reach out with further questions or comments!".

48. Then, on April 12, 2025, seventeen days after reporting the error, Plaintiff again wrote to ONBE again asking for an update regarding the fraud claim.

49. On that same date, ONBE again parroted, "We received your message regarding your prepaid account. Please be advised that your fraud claim has been filed last March 26, 2025 and is still under investigation. Kindly allowed 30 to 45 days for the results of the investigation". Once again, ONBE said, "Thank you, and please don't hesitate to reach out with further questions or comments!".

50. Then on May 13, 2025, forty-seven days after reporting the error, Plaintiff again wrote to ONBE, stating she needed her money and had many things to pay.

51. On May 14, 2025, after the passage of the 45-day investigation timeframe had expired, ONBE again stated that the claim is still under investigation and will take 30 to 45 days due to the need for "thorough evidence collection, detailed analysis, and compliance with legal requirements. (if needed). This time frame allows for comprehensive and accurate results. We apologize for any inconvenience this may cause you."

> And, once again, ONBE added,
>> Thank you, and please don't hesitate to reach out with further questions or comments!

52. Plaintiff then responded back to ONBE the same day noting that the investigation time frame had already passed and requested a response, noting that her money was still missing from the account.

53. On the same day, ONBE sent a message to Plaintiff stating that they had not received any updates regarding the fraud investigation and that they would inform Plaintiff as soon as they receive a response from them. ONBE apologized for the inconvenience and noted that Plaintiff's satisfaction and security are a top priority. And again, ONBE stated, "Thank you, and please don't hesitate to reach out with further questions or comments!".

54. On May 14, 2025, Plaintiff again wrote to ONBE noting that the time frame for

8

investigation had passed and that she needed her money. Plaintiff noted that she has experienced a lot of stress due to this and needs to pay things at home.

55. In a May 15, 2025 response, ONBE thanked Plaintiff for reaching back to them and stated they understood Plaintiff's concern; and that they will inform her as soon as they receive a response from their **"Higher Management"**. ONBE went on to apologize for any inconvenience, and again stating, "Thank you, and please don't hesitate to reach out with further questions or comments!".

56. Again, on the same day ONBE sent another message to Plaintiff apologizing for any inconvenience and stating that,

> Upon checking, there was a response from our Fraud Department that the investigation of your case has concluded. After thorough review of your account and the disputed charge(s), they have determined that your claim/dispute is denied. Detailed summary of your denial has been provided by letter.

Once again, ONBE stated, "Thank you, and please don't hesitate to reach out with further questions or comments!"

57. **Plaintiff never received such a letter;** ONBE never said how or when the purported letter was sent or where it was sent to; notwithstanding the question of how Plaintiff would receive a letter while on a ship.

58. Then on May 16, 2025, fifty days after reporting the error, Plaintiff sent a comprehensive message to ONBE describing her frustration, the stress created by the lack of resolution and the need for the return of her money to pay for things.

59. In response, that same day, ONBE replied to Plaintiff noted that they received her message regarding the status of the fraud claim, and advised that a request for an update has been escalated to the **"proper department"**. ONBE said to kindly allow one to two business days for

9

a response. And again. In their standard form, ONBE stated, "Thank you, and please don't hesitate to reach out with further questions or comments!".

60. On May 26, 2025, sixty days after reporting the error, Plaintiff again wrote to ONBE reiterating that the unauthorized bank account with BDO Unibank in the Philippines was added to her ONBE payroll card account settings without her consent. Plaintiff noted that the account was not hers and she never authorized any transfers to it. Plaintiff further noted the considerable stress and anxiety that was being caused by this situation. Plaintiff noted the serious nature of the fraud and requested that the funds be replaced into her account. Plaintiff also requested that the fraudulent account be immediately removed from her account – which request still has yet to be honored as of the time of this filing.

61. Plaintiff again on May 27th, 2025 echoed similar comments in another message to ONBE.

## ONBE'S SHAM INVESTIGATION EXPOSED
## AFTER TWO MONTHS OF MISLEADING PLAINTIFF

62. Then, on May 27, 2025—sixty-one days after her initial notice to ONBE of the fraudulent transfer—Plaintiff, to her great shock and outrage, received a communication from ONBE stating for the first time **that the claim was resolved on April 7, 2025 (fifty days prior).** Specifically, ONBE noted that in reviewing the account, an update was posted as of today [May 27, 2025]. ONBE stated that "a copy of the resolution was emailed" to Plaintiff, and that Plaintiff should check her email for the details. No date, nor email address for the purported email was provided. Although the communication did not expressly state the outcome of the claim, ONBE's aforesaid May 15, 2025 correspondence—coupled with its failure to recredit Plaintiff's funds—made it clear that the claim was denied. And again, in typical fashion, ONBE signed off stating, "Thank you, and please don't hesitate to reach out with further questions or comments!.

63. **Plaintiff never received the purported email ONBE claims was sent to her.**

10

64. After the exhaustive, misleading and frustrating sequence of events over a two-month period, Plaintiff succeeded in getting a conference call, via "Microsoft Teams", with ONBE representatives a month later, on June 27, 2025—some 92 days after Plaintiff reported the fraud.

65. Among the ONBE participants was a Will Flint who stated that ONBE would deposit $5,000 into Plaintiff's account as a "courtesy"— a very curious concession by a company taking the position that Plaintiff authorized the transfer.

66. Mr. Flint went on to inform Plaintiff that ONBE would refund the stolen funds only if Plaintiff could identify the hacker—a coercive and improper condition that shifted ONBE's affirmative investigatory EFTA-based duty onto the victim, despite Plaintiff's clear entitlement to reimbursement under the EFTA. Plaintiff, however, had no idea who hacked her account and accordingly could not answer Mr. Flint's question. Mr. Flint indicated that the investigation would continue.

67. ONBE's aforesaid conduct was outrageous and was done knowingly, intentionally, willfully, maliciously and in reckless disregard to the rights of Plaintiff.

## COUNT ONE
### Violations of the Electronic Fund Transfer Act ("EFTA")
### 15 U.S.C. § 1693, et seq.

68. Plaintiff incorporates the foregoing paragraphs herein.

69. The aforesaid fraudulent transfers were "unauthorized electronic fund transfers" as defined under the EFTA in that they were initiated by a person other than the Plaintiff without actual authority to initiate such transfers and from which Plaintiff received no benefit. 15 U.S.C. § 1693a(12).

70. More specifically, as aforesaid unauthorized transfers were made internationally, they constituted "Remittance Transfers" under U.S.C. § 1693o-1, and, accordingly, are subject to protections provided by the EFTA.

71. Pursuant to 12 C.F.R. § 1005.6(b), a consumer's liability for fraudulent transactions is limited to $50 if the consumer notifies the financial institution within two business days after discovering the fraud; Plaintiff did so in this case, and her liability is so limited.

72. In the face of Plaintiff's dispute that aforesaid transactions were fraudulent and unauthorized, the burden of proof is on Defendants to show otherwise. 15 U.S.C § 1693g(b).

73. Defendants have not and cannot meet this burden.

74. Plaintiff cannot be held liable for the unauthorized fraudulent transfers unless the means of access to the payroll card account can be linked to Plaintiff or an authorized person—something Defendants have failed to do and cannot do. 15 U.S.C § 1693g(a).

75. Defendants did not have a reasonable basis for believing that Plaintiff's account was not in error.

76. Defendants knowingly and willfully concluded that Plaintiff's payroll card account was not in error when such conclusion could not reasonably have been drawn from the evidence available at the time of its investigation.

67. Defendants have violated the EFTA and Regulation E in at least the following respects:

    a) failing to conduct a good faith investigation of Plaintiff's notice of error—15 U.S.C § 1693f(a)(3);

    b) failing to conclude the investigation with 45 days from the notice of error—15 U.S.C § 1693f(c); or, alternatively, within 90 days to the extent the transfer was initiated outside a state—12 C.F.R. § 1005.11(c)(3)(ii)(A);

    c) failing to provisionally credit Plaintiff's account for the amount in dispute within 10 business days from the notice of error—15 U.S.C § 1693f(c);

d)     depriving Plaintiff the use of her money which was required to have been provisionally credited during the pendency of the investigation—15 U.S.C § 1693f(c);

e)     not having a reasonable basis for believing that Plaintiff's account was not in error—15 U.S.C § 1693f(e)(1);

f)     knowingly and willfully concluding that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendants at the time of the investigation—15 U.S.C § 1693f(e)(2);

g)     improperly holding Plaintiff liable and charging her for the fraudulent unauthorized charges when the means of access to the payroll card was not linked to Plaintiff or an authorized person—15 U.S.C § 1693g(a);

h)     failing to deliver or mail to Plaintiff the results of its determination within 3 business days after the conclusion of its investigation—15 U.S.C. § 1693f(d);

i)     failing to provide Plaintiff an explanation, including the reasons for the denial of Plaintiff's claim within 3 business days after the conclusion of the investigation—15 U.S.C. § 1693f(d), (see also, CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3, available at: https://files.consumerfinance.gov/f/documents/cfpb_supervisory-highlights_issue-22_2020-09.pdf;

j)     failing to provide Plaintiff with notice of her right to request reproductions of all documents which Defendants relied on to reach the conclusion that no error occurred—15 U.S.C. § 1693f(d).

    k)    failing to promptly provide Plaintiff with the documents Defendant relied upon during its investigation after Defendant—15 U.S.C. § 1693f(d)**.**

## ACTUAL DAMAGES

68.    As a direct and proximate result of Defendants' aforesaid egregious conduct and violations, Plaintiff has suffered pecuniary losses amounting to $41,990.02, less the belated $5,000.00 so-called "courtesy" credit; and further has been deprived of the use of her money.

69.    As a direct and proximate result of Defendants' aforesaid egregious conduct and violations, Plaintiff has suffered severe and ongoing emotional distress, including but not limited to stress, fear, worry, anger, frustration, upset, annoyance, sleepiness, embarrassment and humiliation, victimization and abandonment, inconvenience, and loss of time.

## PLAINTIFF IS ENTITLED TO TREBLE DAMAGES - 15 U.S.C. § 1693f(e)

**70.**    Under the EFTA, specifically 15 U.S.C. § 1693f(e), a consumer **shall be entitled to treble damages** if either one of the following subparagraphs apply:

    a)    Defendants did not provisionally recredit Plaintiff's account within the ten-day period specified in 15 U.S.C § 1693f(c); AND Defendants (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error;

    b)    Defendants knowingly and willfully concluded that the Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendants at the time of the

investigation, then the consumer shall be entitled to treble damages determined under section 1693m(a)(1) of the EFTA.

71. In this case, Plaintiff submits that the facts of this case mandate the awarding of treble damages under either of the above subparagraphs.

72. In addition to damages, Plaintiff is entitled to costs and attorneys' fees as permitted under the EFTA.

WHEREFORE, Plaintiff requests the Court enter an award for:

a) actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b) statutory damages in the amount of $1000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c) treble damages pursuant to 15 U.S.C § 1693f(e);

d) costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1693m(a)(3);

e) an order requiring ONBE to remove the fraudulent link to BDO UniBank Inc from Plaintiff's payroll card account;

f) such other relief as the Court deems just and proper.

### COUNT TWO
### Conversion

73. Plaintiff incorporates the foregoing paragraphs herein.

74. In this case, Defendants, without Plaintiff's consent or lawful justification deprived and/or interfered with Plaintiff's right to her money.[1]

75. Said conduct constitutes the tort of conversion.

76. Defendants acted in bad faith, knowingly, willfully and intentionally, and failed to comply with statutory duties as outlined above, all for the purpose of depriving Plaintiff her money.

---

[1] Money may be the subject of conversion. *See, Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 878 (Pa. Super. 1997).

77. Defendants' aforesaid wrongful conduct of withholding Plaintiff's $41,990.02 (less the belated $5,000.00 so-called "courtesy" credit) was knowing, intentional, willful, wanton and malicious, and was done with evil motive and/or in reckless disregard to the rights of Plaintiff; all of which warrants the imposition of punitive damages.

WHEREFORE, Plaintiff requests an award for damages, including punitive damages and such other damages and relief as the Court deems appropriate.

## COUNT THREE
### Trespass to Chattels

78. Plaintiff incorporates the foregoing paragraphs herein.

79. Defendants intentionally dispossessed Plaintiff of her money amounting to $41,990.02, less the belated $5,000.00 so-called "courtesy" credit.

80. Defendants using and/or intermeddled with Plaintiff's money amounting to $41,990.02, less the belated $5,000.00 so-called "courtesy" credit.

81. Defendants' aforesaid wrongful conduct constitutes the tort of Trespass to Chattels.

82. Defendants' aforesaid wrongful conduct of withholding Plaintiff's $41,990.02 (less the belated $5,000.00 so-called "courtesy" credit) was knowing, intentional, willful, wanton and malicious, and was done with evil motive and/or in reckless disregard to the rights of Plaintiff; all of which warrants the imposition of punitive damages.

WHEREFORE, Plaintiff requests an award for damages, including punitive damages and such other damages and relief as the Court deems appropriate.

## COUNT FOUR
### Fraudulent Misrepresentation

83. Plaintiff incorporates by reference all preceding paragraphs herein.

84. After the June 27, 2025 Microsoft Teams conference call meeting, ONBE's Will Flint sent Plaintiff a July 11, 2025 electronic communication wherein he fraudulently

misrepresented that "due to regulation, we are not required to provide this funding." (Referencing the aforesaid $5,000 "courtesy" credit that ONBE had provided.)

85. Upon information and belief, Defendant ONBE made this material misrepresentation for the purpose of misleading Plaintiff into believing that the transactions were not subject to the protections afforded to her under the Electronic Fund Transfer Act ("EFTA") and Regulation E, when in fact those protections applied.

86. To make its misrepresentation more believable and to conceal its statutory duties and liability under the EFTA, ONBE provided Plaintiff with a partial payment of approximately $5,000 to create a false appearance of cooperation or goodwill.

87. Defendant made these misrepresentations despite knowing that under the EFTA regulations, it was required to recredit Plaintiff for the unauthorized transaction; particularly since Will Flint, himself, admitted during the conference call that he knew Plaintiff did not make the transactions in question.

87. Defendant ONBE's representation that "due to regulation, we are not required to provide this funding", was false and misleading.

88. Defendant ONBE knew the representations were false or misleading, or recklessly disregarded their falsity, or made them without any reasonable basis, with the intent to avoid, delay, or diminish its statutory obligations to properly investigate, provisionally credit, and fully reimburse Plaintiff for the unauthorized transfers.

89. Plaintiff reasonably and justifiably relied on Defendant ONBE's misrepresentations by delaying escalation of her dispute, refraining from earlier pursuit of statutory remedies, and believing she would suffer the financial loss indefinitely.

90. As a direct and proximate result of Defendant ONBE's fraudulent misrepresentations, Plaintiff suffered damages, including but not limited to loss of her wages,

17

interest, financial hardship, loss of statutory rights and procedural protections, consequential financial losses, extreme, severe and foreseeable emotional distress, and litigation-related costs.

91. Defendant ONBE's conduct was knowing, intentional, willful, wanton and malicious, and was done with evil motive and/or in reckless disregard to the rights of Plaintiff; all of which warrants the imposition of punitive damages.

92. Plaintiff seeks all available relief, including compensatory damages, punitive damages, interest, costs, and such other relief as the Court deems just and proper.

WHEREFORE, Plaintiff requests an award for damages, including punitive damages and such other damages and relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all triable claims.

Respectfully submitted,

*/s/ Joseph M. Adams*
Joseph M. Adams, Esq.
PA Attorney ID No.: 58430
200 Highpoint Drive, Suite 211A
Chalfont, PA 18914
215-996-9977
josephmadamsesq@verizon.net
Attorney for Plaintiff, Maria Carla Giannino